[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 570.]

THE STATE OF OHIO, APPELLANT, *v*. MCDERMOTT;  LAWRENCE, APPELLEE.

[Cite as *State v. McDermott*, 1995-Ohio-80.]

*R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived.*

R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived. (*Swetland v. Miles* [1920], 101 Ohio St. 501, 130 N.E. 22, paragraph three of the syllabus followed; *State v. Post* [1987], 32 Ohio St.3d 380, 513 N.E.2d 754, paragraph one of the syllabus, modified.)

(No. 94-461—Submitted April 4, 1995—Decided July 26, 1995.)

APPEAL from the Court of Appeals for Lucas County, No. L-93-010.

————————————

{¶ 1} The state of Ohio appeals from the judgment of the court of appeals reversing the decision of the trial court which found Attorney John Lawrence ("Lawrence") in contempt of court for refusing, in defiance of a court order, to testify regarding a communication that he claimed was protected by the attorney-client privilege.

{¶ 2} Lawrence was Jeffrey McDermott's attorney when the murder of Elmwood Poe McKown occurred.  Five years later, the state accused McDermott of McKown's murder. The state subpoenaed Lawrence to testify at McDermott's trial regarding a conversation with McDermott immediately after the murder. McDermott had not consented to any disclosure by Lawrence.

{¶ 3} On three occasions during the criminal proceeding against McDermott, the trial court ruled on the issue of whether Lawrence must testify. Each ruling prompted a separate appeal to the Sixth District Court of Appeals.

**{¶ 4}** The first ruling occurred because the prosecution moved to compel Lawrence's testimony at a post-indictment, investigatory grand jury hearing concerning his knowledge of McDermott's involvement in the murder. At that hearing, Warren Lawrence ("Warren"), Attorney Lawrence's brother, testified that McDermott told him about the conversation that McDermott had with Lawrence, in which McDermott admitted to the attorney that he killed McKown. Lawrence testified that he represented McDermott on three separate occasions, and any conversation he had with McDermott in 1985 was in his role as McDermott's attorney. The trial court found that Warren's testimony concerning McDermott's conversation with Lawrence raised a presumption that McDermott waived the attorney-client privilege and ordered Lawrence to appear for limited questioning about McDermott's presumed waiver. At that hearing, Lawrence refused to divulge the substance of any conversations that he had with McDermott while serving as McDermott's attorney. The trial court held Lawrence in contempt and both he and McDermott appealed. The court of appeals reversed the finding of contempt, holding that the trial court had insufficient evidence of waiver to warrant ordering Lawrence to testify. *State v. McDermott* (1991), 73 Ohio App.3d 689, 598 N.E.2d 147.

**{¶ 5}** Upon remand, the trial court held a hearing to supplement the record and to determine whether McDermott waived the attorney-client privilege. Again, Warren testified. Another witness also testified that McDermott disclosed to him the substance of McDermott's conversation with Attorney Lawrence and that McDermott made incriminating statements to him about the murder. The trial court found that the state had not established waiver because there was no showing that McDermott voluntarily disclosed the actual content of the entire conversation. Therefore, his attorney could not be compelled to testify. The prosecution appealed and the court of appeals reversed. *State v. McDermott* (1992), 79 Ohio App.3d 772, 607 N.E.2d 1164. Relying on paragraph one of the syllabus in *State v. Post* (1987),

32 Ohio St.3d 380, 513 N.E.2d 754, the appellate court held that the trial court erred in holding that waiver cannot occur unless the client discloses to a third party the exact content of the entire conversation. This court denied McDermott's attempt to appeal. *State v. McDermott* (1992), 65 Ohio St.3d 1430, 600 N.E.2d 675.

{¶ 6} The issue of waiver arose for the third time during McDermott's trial. The prosecution called Lawrence during its case-in-chief. He again refused to testify, for which he was held in contempt and jailed for two days. Upon appeal, the trial court's finding of contempt was reversed, with the appellate court overruling its previous decision regarding waiver. The court of appeals decided that its earlier reliance on the *Post* syllabus was mistaken, and that the law on the subject is found in *Swetland v. Miles* (1920), 101 Ohio St. 501, 130 N.E. 22. Despite the broad language of the *Post* syllabus, the court of appeals reconciled *Post* with *Swetland* by discerning that *Post* necessarily applies only to those communications deemed to be privileged by common law, not those that are covered by the statutory privilege.

{¶ 7} The cause is now before this court pursuant to the allowance of a motion to certify the record.

––––––––––––––––

*Anthony G. Pizza*, Lucas County Prosecuting Attorney, and *J. Christopher Anderson*, Assistant Prosecuting Attorney, for appellant.

*Cooper, Straub, Walinski & Cramer* and *Richard Walinski; Kaplan, Richardson, Rost & Helmick* and *Jon D. Richardson*, for appellee.

*Harvey B. Bruner & Associates, Harvey B. Bruner* and *Bret Jordan*, urging affirmance for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Squire, Sanders & Dempsey* and *Terri-Lynne B. Smiles*, urging affirmance for *amicus curiae*, Ohio State Medical Association.

*Kaplan & Lipson* and *Samuel Z. Kaplan; David H. Bodiker*, Ohio Public Defender, *Gloria Eyerly* and *Barbara Farnbacher*, Assistant Public Defenders,

urging affirmance for *amici curiae*, Ohio Association of Criminal Defense Lawyers and Office of the Ohio Public Defender.

*Charles G. Hallinan; Dinsmore & Shohl* and *Mark A. Vander Laan; Shumaker, Loop & Kendrick* and *Thomas G. Pletz*, urging affirmance for *amici curiae*, Catholic Archdiocese of Cincinnati, Daniel E. Pilarczyk, Archbishop, and Catholic Diocese of Toledo.

*Albert L. Bell* and *Eugene P. Whetzel*, urging affirmance for *amicus curiae*, Ohio State Bar Association.

_____

**COOK, J.**

{¶ 8} In Ohio, attorneys, as well as other professionals, have presumed that professional discussions with clients may not later be the subject of testimony by that professional, even when the client has told a third person what was discussed. A contrary view, however, is apparent from paragraph one of the syllabus of *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, which reads: "[a] client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying the privilege, and constitutes a waiver thereof." Due to what we now judge to be its overbreadth, we modify, as far as it is inconsistent with our opinion today, the waiver proposition of the Post syllabus. Instead, we follow *Swetland v. Miles* (1920), 101 Ohio St. 501, 504, 130 N.E. 22, 23, where this court held that the Ohio statute on privileged communication (now R.C. 2317.02) evinced the sole criteria for waiving the privilege: (1) the client expressly consents, or (2) the client voluntarily testifies on the same subject.

{¶ 9} In *Swetland*, this court analyzed G.C. 11494, the predecessor to R.C. 2317.02. The appellant requested that the court judicially extend the statute to provide for an additional waiver of the testimonial privilege. Although that statute provided only two circumstances by which the client could waive the privilege, the

client's express consent or the client's testifying on the same subject, the appellant urged the court to adopt the further exception of allowing the client's personal representative or heirs to waive the privilege when the client is deceased. As the language of the statute was comprehensive, this court ruled that the General Assembly may broaden the statutory exceptions which constituted waiver of the privileged communications but that the courts should not augment the enumerated waivers.[1] "The argument addressed to this court might be addressed to the legislature with persuasive power * * * but it is not for this court to make such an amendment." *Id.*, 101 Ohio St. at 504-505, 130 N.E. at 23.

{¶ 10} The General Assembly has plainly and distinctly stated that the privileges of R.C. 2317.02 are to be given effect absent specific statutory exceptions. *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674. See, also, *State ex rel. Lambdin v. Brenton* (1970), 21 Ohio St.2d 21, 24, 50 O.O.2d 44, 46, 254 N.E.2d 681, 683. We believe that the reasoning in *Swetland* applies equally well to the state's contention in this case. The state, however, contendsthat it is our decision in *Post* which controls.

{¶ 11} In *Post,* an attorney employed a polygraph examiner as his agent.The client of the attorney submitted to a polygraph examination without his attorney present, and in the course of the examination, confessed in writing to a crime. The client later told a third party about his confession to the polygraph examiner. The trial court ruled that the written statement as well as the polygraph examiner's testimony was admissible because the client's disclosure to the third party waived any privilege. The client appealed, asserting that the polygraph examiner's testimony should not have been allowed into evidence. This court found the client's discussion with the polygraph examiner privileged but also found that privilege

---

1. The legislature subsequently modified the statute to include waiver by the "surviving spouse or the executor or administrator of the estate of the deceased client." 125 Ohio Laws 313.

waived when the client revealed the content of the privileged communication to a third party. At common law, the attorney-client privilege could be waived either expressly or by conduct implying waiver. See 8 Wigmore, Evidence (McNaughton Rev. 1961), Section 2327.

{¶ 12} The statute that controls the case before us is R.C. 2317.02(A), which states:

"The following persons shall not testify in certain respects:

"(A) An *attorney*, concerning a communication made to him by his client in that relation or his advice to his client, except that the attorney may testify by express consent of the client * * * and except that, if the client voluntarily testifies * * * the attorney may be compelled to testify on the same subject." (Emphasis added.)

{¶ 13} In *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245, paragraph four of the syllabus, we held that G.C. 11494 (the predecessor to R.C. 2317.02) affords "protection only to those relationships which are specifically named therein." After that decision, the General Assembly adopted R.C. 2317.021, which defines the term "client," as used in the privilege statute, to include the client's "agent, employee, or representative." The definition of the term "attorney" has not been amended to include an agent, employee, or representative of the attorney. While communications directly between the client and attorney fall squarely within R.C. 2317.02(A), communications between a client and an agent of the attorney are not protected by the statute.

{¶ 14} We, therefore, distinguish *Post* from the present case. In the case before us, Attorney Lawrence refused to testify based on R.C. 2317.02(A) because here the discussions were directly between the attorney and the client. *Post*, however, involved the agent of an attorney, a polygrapher. When the client

confessed to the polygrapher, the attorney was not present.[2] The *Post* court, therefore, recognized a judicially created attorney-client privilege where, without the presence of the attorney, the communications between the client and the polygrapher, the attorney's agent, were deemed privileged. The court then properly decided how that common-law attorney-client privilege could be waived. The circumstances of waiver recognized in that case have no relationship to communications that fall squarely within the statutory privilege based on direct communications between attorneys and clients.

**{¶ 15}** To the extent that paragraph one of the syllabus of *Post* is overbroad and would affect the statutory attorney-client privilege by adding a waiver not enumerated in R.C. 2317.02(A), we modify it. The syllabus of a Supreme Court opinion is not to be construed as being broader than the facts of that specific case warrant. *Williamson Heater Co. v. Radich* (1934), 128 Ohio St.2d 124, 126, 190 N.E. 403, 404; *DeLozier v. Sommer* (1974), 38 Ohio St.2d 268, 271, 67 O.O.2d 335, 337, 313 N.E.2d 386, 389. The decision in *Post*, however, remains a valid judgment of this court despite our limiting of paragraph one of the syllabus.

**{¶ 16}** As we decline to add a judicially created waiver to the statutorily created privilege, we hold that R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived. Lawrence's act of refusing to testify was not contemptuous because McDermott had not waived the attorney-client privilege—he neither expressly consented to Lawrence's testifying nor did he voluntarily testify on the same subject.

**{¶ 17}** Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

---

2. While this court's opinion in *Post* does not clearly indicate whether the defendant's attorney was present at this confession, the defendant's brief to this court in Post stated that the attorney was not present.

MOYER, C.J., DOUGLAS, WRIGHT, FAIN and PFEIFER, JJ., concur.

F.E. SWEENEY, J., concurs in judgment only.

MIKE FAIN, J., of the Second Appellate District, sitting for RESNICK, J.

_____